## HARTFORD COURANT COMPANY *v.* STATE OF CONNECTICUT

SUPERIOR COURT      HARTFORD COUNTY      FILE No. 86545

Memorandum filed February 8, 1954.

*Day, Berry & Howard,* of Hartford, for the Plaintiff.

*William L. Beers,* Attorney General, and *Jack Rubin,* Assistant Attorney General, of Hartford, for the Defendant.

BORDON, J. The plaintiff purchased the property known as 285-305 Broad Street, Hartford, on March 15, 1945. It acquired the property as a home for its publishing business and not as a real estate investment. On February 24, 1941, the defendant had

leased the premises from the then owners for a term of four years from March 1, 1941, to February 28, 1945, at various rentals provided for in said lease. When plaintiff purchased the property, the lease had terminated and the defendant was in occupancy as a month-to-month tenant. Section 7106 of the General Statutes provides that no holding over by any lessee after the expiration of the term of his lease shall be evidence of any agreement for a further lease. Upon acquiring the property, the plaintiff could have taken immediate steps to obtain possession or could have accepted the defendant as a month-to-month tenant at a fair rental. Because the defendant could not be sued, the plaintiff elected to deal with it on a fair basis in the hope that it would find other quarters as quickly as possible. Nevertheless, on March 26, 1945, the plaintiff notified the defendant that it had acquired the property and that henceforth the rent "should be made payable to the Hartford Courant Company." This, in effect, was an acceptance of the defendant's status as a month-to-month tenant. Thereafter the plaintiff made numerous requests to the defendant that it vacate. There is no doubt that it was generally known by the public and by all state officials that the plaintiff was anxious to occupy its property and that any delay would cause inconvenience and, perhaps, expense to it. The plaintiff, however, took no legal steps to accelerate defendant's removal. Although it may have been an unwilling or unhappy landlord, it dealt with the defendant on a business basis from time to time and accepted monthly rents with no more than vocal complaints. In fact, on November 19, 1947, it entered into an agreement for continued occupancy by the defendant at an increased rental of $3016.66 per month beginning November 1, 1947, and on June 15, 1948, entered into a written lease for increased space at a rental of $8699.81 per month for a period of eleven months.

At no time did the plaintiff put the defendant on notice that it would hold it responsible for increased cost of construction caused by its refusal to vacate, nor did the plaintiff ever notify the defendant that it would seek damages for loss of sale of its State Street property. All of this was undoubtedly due to the plaintiff's realization that the defendant could not be sued. Nevertheless, the plaintiff could have laid a foundation for its intended claims by notifying the defendant of its intention to claim damages when given legislative permission to do so. There is nothing in the evidence from which it can be found or inferred that the plaintiff was not entirely satisfied with its dealings with the defendant subject, of course, to its constant and continuous insistence that the property be made available as soon as possible. The plaintiff obtained legislative permission to sue the defendant on June 22, 1949, but instead of doing so, entered into its written lease for continued occupancy.

The plaintiff claims in excess of $79,000 as additional rent, $96,500 for loss on sale of its State Street property, in excess of $391,000 for increased cost of alterations, and in excess of $163,000 as expenses in maintaining its State Street property, all of which items, together with interest, amount to more than $900,000.

It should be said to the credit of both parties that they were ably represented in court. Counsel have been unusually helpful to the court in determining the legal questions here involved. The trial briefs filed have lightened the court's burdens in seeking out applicable and appropriate authorities which led to the conclusions arrived at.

Aside from the plaintiff's claim that inadequate rent was paid from April 1, 1945, to October 30, 1947, the court can find no legal sanction for its other claims. In the first place, there was no con-

tract in existence between the parties, when the plaintiff acquired the property, from which consequential damages could flow. The lease having expired on February 28, 1945, the defendant could have been treated by the plaintiff as a tenant at sufferance or as a month-to-month tenant at a reasonable rental. By its letter of March 26, 1945, it elected to deal with the defendant as a month-to-month tenant, and the defendant thereupon became obligated to pay a reasonable rental. *Welk* v. *Bidwell,* 136 Conn. 603; *DiCostanzo* v. *Tripodi,* 137 Conn. 513.

"The general rule is that, where a contract has been broken, the damages which may be recovered for the breach are such as may reasonably be supposed to have been in contemplation of both parties at the time they made the contract as the probable result of the breach of it." *Patterson* v. *Illinois Central Ry. Co.,* 123 Ky. 783, 785; *Hadley* v. *Baxendale,* 9 Ex. 341; *Stevens* v. *Yale,* 101 Conn. 683; 5 Corbin, Contracts, § 1007.

If the plaintiff claims consequential damages as a result of the expired lease, it must be held that at the time the lease was entered into no such damages could have been anticipated by either party to the contract. To warrant a recovery for the loss here claimed by the plaintiff it must be made to appear that such loss was the natural and proximate result or consequence of the breach of contract and such as may reasonably be supposed to have been within the contemplation of the parties when the contract was made. 15 Am. Jur. 564, § 152; *Hadley* v. *Baxendale,* supra.

The plaintiff was not a party to the original contract and cannot now claim benefits under it, especially when it never evidenced any intention to do so during defendant's occupancy. All of the cases cited by the plaintiff are inapplicable because they

are all based on a breach of contract which does not exist in this case. The only contracts that can be helpful to the plaintiff are those entered into subsequent to its acquisition of the property, and none of them contemplate surviving rights here asserted.

There is one claim made by the plaintiff with which the court is in partial agreement. When the plaintiff acquired the property the defendant was in occupancy without a lease. The plaintiff permitted it to remain. It is entitled to the reasonable rental value from April 1, 1945, until it entered into a new month-to-month lease as of November 1, 1947. Whether the defendant be regarded as a tenant by sufferance or as a month-to-month tenant, the law requires it to pay a reasonable rental. *Welk* v. *Bidwell,* 136 Conn. 603. The court cannot agree with the plaintiff's claim that this rule applies beyond November 1, 1947, because of the voluntary agreement made by the plaintiff for increased rental from that date. Accordingly, it is found that the reasonable rental value of the premises occupied by the defendant from April 1, 1945, until October 30, 1947, is $83,620. During that period the defendant paid only $64,583.33, leaving a balance due the plaintiff of $19,036.67, which together with interest amounts to a total of $25,889.87, for which amount judgment may be entered for the plaintiff.